**In re Tammy L. CHURCH, Debtor.**

**James W. McROBERTS, Chapter 13 Trustee, Plaintiff,**

**v.**

**WFS FINANCIAL, INC., Defendant.**

Bankruptcy No. 96–31637.
Adversary No. 96–3239.

United States Bankruptcy Court,
S.D. Illinois.

Feb. 26, 1997.

James W. McRoberts, Belleville, IL, for Plaintiff.

Phyllis Schauffler, St. Louis, MO, for Defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

In May 1996 prior to bankruptcy, the debtor, an Illinois resident, purchased a used 1993 Ford Escort from a car dealership located in Missouri, with the understanding that the vehicle would be taken to Illinois and titled in that state.[1] In connection with the sale, the debtor executed a retail installment contract and security agreement, granting the dealer a security interest in the vehicle. As part of the same transaction, the dealer assigned the existing Missouri certificate of title for the vehicle to the debtor and delivered it to her, leaving with the debtor the responsibility of paying the Illinois use tax and of obtaining an Illinois certificate of title with the lien noted.[2] The dealer then assigned the retail installment contract and security agreement to the defendant finance company. Because the parties intended the vehicle to be kept and registered in Illinois, the security interest of the defendant was never perfected in Missouri.

In July 1996 the debtor filed for relief under chapter 13 of the Bankruptcy Code. At the time of filing, the debtor had not paid the Illinois tax or applied for an Illinois certificate of title. The defendant's lien, therefore, was not indicated on an Illinois title to the vehicle. Despite this, the defendant filed a proof of claim in the debtor's bankruptcy proceeding alleging a security interest in the subject vehicle.

The chapter 13 trustee filed a complaint to avoid the defendant's lien under 11 U.S.C. § 544(a)(1), arguing that because no certificate of title was issued showing the defendant's lien on the vehicle, the lien was not properly perfected and should be avoided. In response, the defendant asserted that the vehicle is not property of the debtor's bankruptcy estate, and is not subject to the trustee's avoiding powers, because title did not pass to the debtor as a result of her failure to obtain an Illinois certificate of title. According to the defendant, the dealership remains the owner of the vehicle on the only existing certificate of title, and the defendant is the rightful owner of the vehicle as the assignee of the dealership. Alternatively, the defendant maintains that the Court should impose a constructive trust and find that the debtor holds the vehicle for the benefit of the defendant, rendering it property outside the bankruptcy estate.

1. The facts in this case are undisputed.

2. *See* 625 ILCS 5/3–104(f).

 ] Under § 544(a)(1), the trustee, upon commencement of a bankruptcy case, acquires the status of a hypothetical judicial lien creditor and may avoid any lien or encumbrance on the debtor's property that such creditor could avoid under state law. 11 U.S.C. § 544(a)(1). The trustee's § 544(a)(1) avoiding power is dependent on state law—that is, the trustee's rights are those which state law would allow to a hypothetical creditor of the debtor who, as of the commencement of the case, has taken the necessary steps to perfect a lien on the debtor's property. *See 5 Collier on Bankruptcy,* ¶ 544.02 (15th ed. rev. 1996).

 Under Illinois law, an unperfected security interest in a motor vehicle is subordinate to a judgment lien such as that held by the trustee in bankruptcy under § 544(a). *See United States v. Rotherham,* 836 F.2d 359, 364–65 (7th Cir.1988); *Matter of Keidel,* 613 F.2d 172, 173 (7th Cir.1980). The Illinois Vehicle Code states that an unperfected security interest in a vehicle "is not valid against subsequent transferees or lienholders of the vehicle...." 625 ILCS 5/3–202(a). The Uniform Commercial Code further provides, regarding the priority of competing interests in a vehicle, that "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor[3] before the security interest is perfected." 810 ILCS 5/9–301(1)(b); *see In re Bell,* 194 B.R. 192, 196 (Bankr.S.D.Ill.1996).[4]

In Illinois, a security interest in a used motor vehicle is perfected "by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required

fee." 625 ILCS 5/3–202(b).[5] In this case, the defendant's lien was unperfected due to the failure of any party to make such an application for title. Upon the filing of the debtor's bankruptcy case, therefore, the rights of the defendant as the holder of an unperfected security interest became subordinate to those of the trustee, who stood in the position of a lien creditor. *See Keidel,* 613 F.2d at 173. Accordingly, the trustee is entitled to avoid the defendant's unperfected security interest under § 544(a)(1).

The defendant, attempting to prevent such action by the trustee, argues that there was no legal sale of the vehicle or passing of title to the debtor as a result of her failure to have the vehicle titled in her name and that the defendant, as assignee of the dealership, is the rightful owner and entitled to possession of the vehicle. In support, the defendant cites a case decided under Missouri law, *Matter of Schalk,* 592 F.2d 993 (8th Cir. 1979), for the proposition that title must have been transferred to the debtor in order for the vehicle to become property of the bankruptcy estate and subject to the trustee's avoiding powers. The Court agrees with the defendant that the law of Missouri, where the sale took place, should be applied to determine whether the sale transaction was void *ab initio.* However, *Schalk* is distinguishable on its facts and is not dispositive of the issue raised here.

 The *Schalk* court invalidated the sale of a used trailer and found that title had not passed to the intended purchaser because he had failed to obtain an assigned certificate of title from the seller in violation of Missouri statutory law. The statute in question, Mo.

---

3. "Lien creditor" includes "a trustee in bankruptcy from the date of filing of the petition...." 810 ILCS 5/9–301(3).

4. The result is the same under Missouri law. *See* Mo.Rev.Stat. §§ 301.600(1), 400.9–301(1)(b), (3).

5. Perfection of the defendant's lien in this case is governed by Illinois law even though the vehicle was subject to an unperfected security interest when brought into this state. In such an instance, the Illinois Vehicle Code specifies:
 If the parties understood at the time the security interest attached that the vehicle would be

kept in this State and it was brought into this State within 30 days thereafter ..., the validity of the security interest in this State is determined by the law of this State.
625 ILCS 5/3–202(c)(1). Section 5/3–202(c) continues:
 If the security interest was not perfected under the law of the jurisdiction where the vehicle was when the security interest attached, it may be perfected in this State; in that case, perfection dates from the time of perfection in this State.
625 ILCS 5/3–202(c)(3).

Rev.Stat. § 301.210,[6] applies to the sale of used vehicles and trailers and expressly provides that the sale of a vehicle or trailer without assignment and delivery of the certificate of ownership "shall be fraudulent and void." Mo.Rev.Stat. § 301.210(4). Subsection (4) has been strictly enforced with the result that a failure to comply means no title passes and the intended purchaser has no ownership interest in the vehicle or trailer. *E.g., Oliver v. Cameron Mut. Ins. Co.,* 866 S.W.2d 865, 868 (Mo.App.Ct.1993).

Although the present case involves the sale of a used vehicle from a Missouri dealership to the debtor, making § 301.210 applicable to the sale, the facts of this case do not support a finding that the sale violated § 301.210(4). To the contrary, the record contains a copy of the Missouri certificate of title showing an assignment from the dealership to the debtor, and nothing indicates that the dealership failed to surrender the certificate of title to the debtor when it sold her the car. The parties here have proceeded on the premise that the debtor was to submit the Missouri certificate of title when applying for an Illinois title, and a hand-written notation on the record copy of the Missouri certificate of title supports this presumption. It states: "Ill. customer[.] [T]hey file the title work[.] [W]e are listed as leinholder [sic]." Thus, the Court must conclude that the certificate of title was transferred to the debtor and that the sale is not void under § 301.210(4).

■ Section 301.210(4) is limited by its terms to the invalidation of used vehicle sales in which the certificate of ownership is not assigned and delivered at the time of sale.

While § 301.210(2)[7] further provides for registration of the vehicle and issuance of a new certificate of ownership, the statute contains no legislative penalty voiding the sale when the buyer disregards the requirement of applying for a new certificate of title. Moreover, the Court is aware of no provision under the laws of either Missouri or Illinois, nor has the defendant cited any, which would invalidate the sale to the debtor based on her failure, after completion of the sale, to pay the Illinois tax and obtain a new title for the vehicle.

■ Contrary to the defendant's argument, under the law of either Missouri or Illinois, the debtor is the rightful owner of the vehicle even though a new certificate of title was not issued in her name. Missouri courts have consistently held that ownership of a used motor vehicle passes to the purchaser at the time of sale by assignment and delivery of the existing certificate of title, and vesting of title is not deferred until issuance of a new certificate of title, which is merely evidence of the title previously acquired. *E.g., Allstate Ins. Co. v. Northwestern Nat'l Ins. Co.,* 581 S.W.2d 596, 602 (Mo. App.Ct.1979); *Manchester Ins. & Indem. Co. v. State Farm Mut. Auto. Ins. Co.,* 460 S.W.2d 305, 307–08 (Mo.App.Ct.1970); *Melugin v. Imperial Cas. and Indem. Co.,* 344 S.W.2d 144, 147 (Mo.App.Ct.1961). In Missouri, a purchaser becomes the lawful owner of a vehicle upon proper assignment of the certificate of title even though the purchaser is not yet registered as the owner. *Allstate,* at 602; *Manchester,* at 308. In this case, therefore, once the certificate of title was assigned and delivered as required by

**6.** This statute provides, in pertinent part:

1. In the event of a sale ... of a motor vehicle ... for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, ... with a statement of all liens or encumbrances on such motor vehicle.... and deliver the same to the buyer at the time of the delivery to him of such motor vehicle....

. . . . .

4. It shall be unlawful for any person to buy or sell in this state any motor vehicle ... registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in

this section, and the sale of any motor vehicle ... registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

Mo.Rev.Stat. § 301.210 (emphasis added).

**7.** Section 301.210(2) states that, subsequent to obtaining a certificate of ownership showing an assignment:

2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for the registration of such motor vehicle ..., whereupon a new certificate of ownership shall be issued to the buyer....

Mo.Rev.Stat. § 301.210(2).

§ 301.210, the debtor became the lawful owner of the vehicle despite her subsequent failure to obtain an Illinois title in her name.

Apart from the assignment and delivery of the existing title to the debtor, moreover, other indicia of the parties' intent reveal that a sale was contemplated and completed. The debtor gave consideration to the dealership at the time of purchase by trading in a vehicle valued at $1,200.00 and by granting a security interest in the vehicle she was purchasing. The debtor was given possession of the vehicle by the dealership at the time of sale, and her right to possession remained unchallenged until the instant litigation. Thus, the defendant's argument that the certificate of title conclusively determined ownership in this case is without merit under Missouri law.

▇▇▇ The same result ensues under Illinois law. Illinois courts, like those in Missouri, look to the parties' intent in determining whether ownership of a vehicle has been transferred. *See Matter of Robison,* 665 F.2d 166, 168–69 (7th Cir.1981); *Dan Pilson Auto Center, Inc. v. DeMarco,* 156 Ill.App.3d 617, 108 Ill.Dec. 733, 735, 509 N.E.2d 159, 161 (1987); *Central Nat'l Bank v. Worden–Martin, Inc.,* 90 Ill.App.3d 601, 46 Ill.Dec. 99, 101, 413 N.E.2d 539, 541 (1980); *Country Mut. Ins. Co. v. Aetna Life and Cas. Ins. Co.,* 69 Ill.App.3d 764, 26 Ill.Dec. 207, 209–10, 387 N.E.2d 1037, 1039–40 (1979). While issuance of a certificate of title is evidence of this intent, it is not conclusive proof of ownership, *Robison,* at 169; *Pekin Ins. Co. v. U.S. Credit Funding, Ltd.,* 212 Ill.App.3d 673, 156 Ill.Dec. 789, 791, 571 N.E.2d 769, 771, *appeal denied,* 141 Ill.2d 545, 162 Ill.Dec. 493, 580 N.E.2d 119 (1991), and "'one can own an automobile though the certificate of title is in the name of another.'" *Pekin,* at 791, 571 N.E.2d at 771 (quoting *State Farm Mut. Auto. Ins. Co. v. Lucas,* 50 Ill.App.3d 894, 8 Ill.Dec. 867, 870, 365 N.E.2d 1329, 1332 (1977)). Therefore, under Illinois law as well, the absence of a new certificate of title issued in the debtor's name does not negate her ownership of the vehicle where the evidence clearly reflects the intent of the dealership to transfer ownership to her. For this reason, the defendant's argument that the vehicle is neither property of the debtor or an asset of her bankruptcy estate must fail.

▇▇▇ The defendant further contends that the debtor should be found to hold the vehicle in constructive trust for the benefit of the defendant as a result of the debtor's misconduct in failing to obtain an Illinois certificate of title showing the defendant's lien. The defendant asserts that since property held in trust by the debtor would not constitute property of her bankruptcy estate, *see* 11 U.S.C. § 541(d), the vehicle is not property of the estate and not subject to the trustee's avoiding powers.

▇▇▇ In Illinois,[8] the remedy of constructive trust is limited in application and not routinely granted. A constructive trust, held to exist when some equitable principle would be violated if the defendant were to retain the benefit of the property at issue, is normally imposed when there has been actual or constructive fraud or where there has been a breach of fiduciary duty. *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.,* 272 Ill.App.3d 370, 208 Ill.Dec. 455, 462, 649 N.E.2d 511, 518 (1995). In addition to specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake, imposition of a constructive trust requires that the evidence be so convincing, strong and unequivocal as to lead but to one conclusion. *Id.* (citing *Suttles v. Vogel,* 126 Ill.2d 186, 127 Ill.Dec. 819, 823, 533 N.E.2d 901, 905 (1988)).

In the present case, the Court finds no basis for imposition of a constructive trust. The debtor's misconduct in failing to pay the Illinois tax and to title the car in Illinois falls far short of conduct that would justify imposition of a constructive trust. Albeit in a different context, this Court has previously addressed the defendant's contention that conduct of a debtor in failing to have a

---

**8.** The defendant has cited the Court to Illinois law for the determination of whether to impose a constructive trust on the vehicle. The Court agrees that Illinois law applies to this issue based on application of the general rule that the situs of the property governs this determination. *See, e.g., In re Howard's Appliance Corp.,* 874 F.2d 88, 93–94 (2d Cir.1989).

creditor's lien noted on a vehicle's certificate of title should give rise to an equitable remedy such as constructive trust, finding that equitable liens arising under state law are contrary to the letter and purpose of the Bankruptcy Code and are, therefore, ineffective against a trustee's § 544(a)(1) avoiding power. *See In re Bell*, 194 B.R. 192, 196 (Bankr.S.D.Ill.1996); *In re Wiggs*, 87 B.R. 57, 59 (Bankr.S.D.Ill.1988). Regardless of how the remedy is couched, the Court sees little, if any, distinction between the conduct of the debtors in *Bell* and *Wiggs* and the debtor in this case that would justify a departure from its earlier rulings. While the debtor here failed to comply with the statutory requirements for registering and operating a vehicle in Illinois, resulting in the defendant having an unperfected lien, there is no indication this was though fraudulent intent rather than neglect or inability to pay. In addition, the defendant has itself failed to take steps necessary to protect its interest in the vehicle.[9] As this Court noted in *Bell*, creditors can easily prevent a debtor's supposed abuse in failing to have such liens perfected by tightening their procedures for ensuring their liens are recorded on the vehicle titles.[10]

 The defendant requests, finally, that if the Court rules against it on the complaint, the debtor or the trustee be ordered to immediately pay the tax on the vehicle and obtain a new certificate of title listing the defendant as lienholder. The defendant reasons that in the event the debtor's bankruptcy case is dismissed prior to discharge, it would then be "returned to its status as a properly perfected secured creditor." (WFS Financial, Inc.'s Reply Mem. at 4.) In *Bell*, the Court fashioned its order to protect the creditors' interests in the event their liens were reinstated upon dismissal of the debt-

ors' cases prior to discharge. *See* 11 U.S.C. § 349(b)(1)(B). The Court did so by prohibiting the debtors from transferring their respective vehicles until further order of the Court or until their chapter 13 plans had been completed and their orders of discharge entered. *See Bell*, at 198–99. The Court believes such a provision is adequate to protect the defendant here and, accordingly, imposes on the debtor the same prohibition against transferring the vehicle in this case.

For the reasons stated, the Court finds that judgment should enter for the chapter 13 trustee and against the defendant in the trustee's lien avoidance action under § 544(a)(1).

---

9. In Missouri, an owner who creates a lien on a motor vehicle is charged with the responsibility of executing the application to name the lienholder on the certificate of ownership and of delivering the certificate, the application and the application fee to the lienholder. The lienholder, in turn, must immediately mail or deliver the documents and fee to the director of revenue. Mo.Rev.Stat. § 301.620(1), (2). The law is virtually the same in Illinois. *See* 625 ILCS 5/3–112(d), 5/3–203(a), (b).

10. Citing *Matter of Keidel*, 613 F.2d at 174, this Court indicated that one method of tightening procedures would be to require the debtor to deliver the old certificate of title along with an application for the new title and the application fee as a condition of advancing funds. *Bell*, at 198 n. 14.